**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HAROLD E. LEAPHART, | : | CIVIL NO. 3:10-CV-1019 |
| | : | |
| Plaintiff, | : | (Judge Kosik) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| PRISON HEALTH SERVICES, INC., | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction

Fairly construed, this *pro se* prisoner civil rights lawsuit presents a single question: Does the amputation of an inmate's allegedly cancerous testicle without his prior knowledge or consent violate the prisoner's constitutional rights? Because the courts have recognized that prisoners have a basic liberty interest in personal autonomy which requires that they consent to invasive, irreversible medical treatments like amputation of body parts, we conclude that the allegations set forth in the complaint sufficiently state a constitutional claim upon which relief can be granted, and will recommend that the motions to dismiss filed by the Defendants be denied.

### II.  Statement of Facts and of the Case.

The well-pleaded facts in this case can be simply stated: This is a *pro se* civil rights action brought by Harold Leaphart, a state inmate who is currently confined at

the State Correctional Institution (SCI) Fayette, and was previously housed at SCI Huntingdon. On May 12, 2010, Leaphart filed a complaint, (Doc. 1) which he amended on October 4, 2010, (Doc. 50), naming Prison Health Services, Inc. ("PHS"), the contract health care provider for the Department of Corrections, two PHS staff, Dr. Frederick Klemick, and Physician Assistant Angela Auman and an outside physician, Dr. Raj Kansal, as Defendants.

In his complaint, Leaphart describes a striking series of events. According to Leaphart, beginning in February of 2008, he experienced severe pain from a lump on his right testicle. (Docs. 1, and 50.) When Leaphart was examined by prison medical personnel they initially, and erroneously, diagnosed his condition as epididymitis, a form of testicular infection and inflammation. (Id.) When the condition persisted for several months, medical staff expressed a concern that their diagnosis was in error and that the testicle might be cancerous. (Id.) Therefore, the Defendants scheduled Leaphart for an additional examination and medical procedure with Dr. Kansal, a local urologist. Leaphart alleges that he was informed by the Defendants that the purpose of this procedure was to conduct a biopsy to determine whether his testicle was, in fact, cancerous, and that once the biopsy was completed he understood that he and the doctors would review the biopsy results and assess Leaphart's medical options. (Id.)

Leaphart underwent this surgical procedure under general anesthesia on May 13, 2008. According to Leaphart, when he awoke from surgery he discovered that the doctors had amputated his right testicle without his prior knowledge, approval or consent. (Id.) Alleging that he never consented to the amputation of this body part, Leaphart has now brought this civil action alleging that the Defendants' actions in neglecting his medical condition, and then amputating his testicle without his consent violated his constitutional rights, and also constituted medical malpractice. (Id.) On the basis of these allegations, Leaphart seeks compensatory and punitive damages. (Id.)

The Defendants have now all moved to dismiss Leaphart's complaint. (Docs. 31, 36 and 52.) These motions collectively advance three claims on behalf of all of the Defendants: (1) arguing that Leaphart has failed to articulate a violation of any constitutionally protected rights of this state inmate; (2) further contending that any state malpractice claims are insufficiently pled and proven under state law; and (3) urging the Court to decline to exercise jurisdiction over any such state claims if it finds that no cognizable federal constitutional violation has been alleged. In addition, Dr. Kansal advances a separate argument in support of his motion to dismiss, contending that his involvement in the treatment of this state prisoner, and the amputation of his testicle, is insufficient to constitute "state action" for purposes of liability under the civil rights statute, 42 U.S.C. §1983.

These motions have been fully briefed by the parties and are now ripe for resolution. For the reasons set forth below, it is recommended that these motions to dismiss be denied, in part, to the extent that they assert that Leaphart has failed to state a claim under the United States Constitution, and granted, in part, with respect to Leaphart's failure to comply with the substantive standards mandated for a state malpractice claim under Pennsylvania law.

## II.    Discussion

### A.    Rule 12(b)(6)– The Legal Standard.

The Defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

**B.**     **<u>Legal Standards Governing Medical Claims in a Prison Context</u>**

Liberally construed, the gravamen of Leaphart's complaint is a twofold allegation: First, the Defendants are alleged to have displayed "deliberate indifference" to this inmate's medical needs by neglecting to provide timely treatment for him between February and May, 2008. Second, Leaphart asserts that the Defendants violated his rights by amputating his right testicle without his prior knowledge or consent. (Docs. 1 and 50.) While the parties have treated these two claims as both falling under the rubric of the Eighth Amendment, in fact, the claims articulated by Leaphart implicate two different constitutional protections, the Eighth Amendment and the Fourteenth Amendment's substantive due process protection relating to personal autonomy. The parameters of these two constitutional protections are discussed separately below:

**1.**     **<u>The Eighth Amendment</u>**

At the outset, Leaphart's claim of deliberate indifference to his medical needs states a claim that sounds in the Eighth Amendment and its protection from cruel and

unusual punishment. Indeed, the parties have, erroneously, focused exclusively upon the Eighth Amendment in their analysis of this case.

Leaphart faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, the Plaintiff must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial

risk of serious harm.' <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' <u>Id</u> . at 837." <u>Garvey v. Martinez</u>, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Leaphart is required to allege facts that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of

resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of

Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

### 3. Inmate Substantive Due Process Rights

However, contrary to the suggestion of the parties, the Eighth Amendment does not define the total universe of legal rights applicable to inmates in a medical setting. Quite the contrary, it is well-settled "[t]he Due Process clause of the Fourteenth Amendment substantively protects certain fundamental rights. Among these are the

right to be free from unjustified intrusions into the body, <u>Ingraham v. Wright</u>, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977), the related right to refuse unwanted medical treatment, <u>Rennie v. Klein</u>, 653 F.2d 836, 844 (3d Cir.1981), and, . . . , the right to sufficient information to intelligently exercise those rights." <u>White v. Napoleon</u>, 897 F.2d 103, 111 (3d Cir. 1990). This independent constitutional right grounded in concepts of substantive due process has direct application in the prison health care environment. Thus, while:

> Prisoners may well suffer a . . . greater loss of liberty . . . because prisoners' confinement is intended to punish as well as to rehabilitate. <u>Cf. Youngberg v. Romeo</u>, 457 U.S. at 321-22, 102 S.Ct. at 2461 [i]t is settled, . . ., that prison inmates retain those constitutional rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system. <u>Turner v. Safley</u>, 482 U.S. 78, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64 (1987) (quoting <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974))

> <u>Id</u>. at 112-13

Accordingly, the United States Court of Appeals for the Third Circuit has expressly extended a limited, substantive due process right to refuse medical treatment to prisoners, stating that:

> We hold that convicted prisoners, like involuntarily committed mental patients, retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives. The scope of the right to refuse treatment, however, must be circumscribed by legitimate countervailing State interests. Given the similarity of the State's interests in the administration of mental hospitals and prisons, the

limitation on a prisoner's right of refusal should be similar to the limitation on the right of an involuntarily committed mental patient. Accordingly, a prison may compel a prisoner to accept treatment when prison officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives. As in the case of mental institution authorities, the judgment of prison authorities will be presumed valid unless it is shown to be such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment. Cf. Youngberg v. Romeo, 457 U.S. at 323, 102 S.Ct. at 2462; Rennie, 720 F.2d at 274.

Id. at 113.

There is a logical concomitant to this right to refuse treatment. As the court of appeals observed: "A prisoner's right to refuse treatment is useless without knowledge of the proposed treatment. [Therefore] Prisoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting." Id. Moreover, this right is a limited one which must be "circumscribed by legitimate countervailing state interests." Id.

In practice, courts have applied a three-part test in assessing inmate substantive due process claims based upon the failure to inform prisoners of medical treatment options which denied the inmates the right to make informed choices concerning the right to refuse treatment. "To establish a violation of the constitutional right to medical information, a prisoner [1] must satisfy an objective reasonableness standard, [2] must

demonstrate that the defendant acted with the requisite state of mind, and [3] must make a showing that the lack of information impaired his right to refuse treatment." Pabon v. Wright, 459 F.3d 241, 250 (2d Cir. 2006).

As to the first element of this substantive due process analysis, the objective reasonableness standard recognizes that a "prisoner is entitled only to such information as a reasonable patient would deem necessary to make an informed decision." Id. at 250. Therefore, this element is satisfied when the physician "provide[s] a prisoner with such information as a reasonable patient would find necessary to making an informed decision regarding treatment options." Id.

As for the second component of this substantive due process test, which requires that defendants act with the requisite state of mind, "in order to incur liability a prison official's failure to adequately inform a patient regarding that patient's proposed medical treatment must be done with, at a minimum, deliberate indifference to the prisoner's right to refuse treatment and . . . simple negligence will not suffice." Id. at 251.

Finally, in order to state a substantive due process claim in this setting, an inmate must show that the defendants' failure to disclose information actually impaired the inmate's exercise of his due process right to refuse treatment. As the courts have observed:

[T]he right to medical information is not, in and of itself, an independent right. Rather, it is a derivative of the right to refuse treatment and extends only to those circumstances in which it will effectuate a patient's exercise of that underlying right. So as a threshold matter, a prisoner must show that, had he received information that was not given to him, he would have exercised his right to refuse the proposed treatment. Cf. Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (holding that, to state a claim for denial of the right to access the courts, a prisoner must demonstrate that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim"). That is to say, a prisoner must be able to establish that the underlying right at stake-the right to refuse treatment-actually was impaired by the state's failure to impart necessary information to the prisoner-patient. If a prisoner still would have accepted the proposed treatment, even if he had been given all of the necessary information regarding that treatment, then his right to refuse treatment has not been impaired, and the deprivation of medical information is of no consequence.

Id. at 251-52.

When considering inmate medical claims premised upon an alleged failure to inform, as well as deliberate indifference to medical needs, it is important to note that the contours of these two constitutional rights differ, and conduct which may not violate the Eighth Amendment might still deny an inmate his substantive due process right to refuse certain forms of treatment. For example, an inmate suffering from cancer may be presented with a series of treatment options, some of which involve invasive surgery and removal of body organs, while other forms of treatment may be less radical and invasive. As disagreement between the prisoner and his doctors regarding which treatment option to pursue, standing alone, may not constitute an

Eighth Amendment violation. See e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation). However, if prison doctors unilaterally took it upon themselves to amputate an inmate's body part without the inmate's knowledge or consent, that action might still violate the substantive due process rights of the prisoner, even if the amputation fell within the range of medical treatment options permitted under the Eighth Amendment. Pabon v. Wright, 459 F.3d 241, 250 (2d Cir. 2006); White v. Napoleon, 897 F.2d 103, 111 (3d Cir. 1990).

Moreover, both of these constitutional claims may entail an assessment of matters beyond the pleadings themselves, a task which cannot be undertaken in the context of a motion to dismiss under Rule 12(b)(6). In particular, these claims frequently entail an  an assessment of the nature, extent and quality of the care provided to an inmate as well as an evaluation of the nature and extent of the disclosures made to that prisoner. This is an undertaking which can only be done in a properly documented motion for summary judgment and often must await further factual development of a case.[1]

_____

[1]The way in which this procedural context often defines substantive outcomes in assessing inmate medical claims in a corrections setting is aptly illustrated by Henry v. Wilson, No. 06-1439, 131164 (W.D. Pa. Jan. 9, 2008) (denying Rule 12(b)(6) motion relations to Eighth Amendment deliberate indifference claim ), and  Henry v. Maue, No. 06-1439, 2008 WL 5188834 (W.D. Pa. Dec. 10, 2008)(granting summary judgment on same claim). In Henry, the

## C.    Leaphart's Claims Are Not Subject to Dismissal On The Pleadings

These principles control here and compel denial of these motions to dismiss to the extent that the motions are premised upon a facial challenge to the legal sufficiency of Leaphart's averments under the Eighth or Fourteenth Amendments. At the outset, we note that the parties have not separately addressed Leaphart's substantive due process claim in their pleadings, discussing this case solely in terms of the Eighth Amendment. Yet, a fair reading of Leaphart's complaint, in our view, clearly reveals that Leaphart has alleged both types of constitutional infractions, plainly stating both deliberate indifference in the course of his care and further alleging that his rights were violated when his testicle was amputated without his prior knowledge or consent.

We are obliged to liberally construe the pleadings of a *pro se* litigant. When we undertake this task in Leaphart's case, a fair, liberal construction of his complaint

---

district court was initially constrained to deny a motion to dismiss an inmate complaint premised on allegations of deliberate indifference to the prisoner's Hepatitis C, when the complaint properly alleged such indifference to a serious medical need. Henry v. Wilson, No. 06-1439, 131164 (W.D. Pa. Jan. 9, 2008) However, when the defendants later tendered a fully documented summary judgment motion demonstrating that the undisputed facts showed that the inmate received on-going care and treatment in accordance with the Department of Corrections treatment protocol, the court found that the defendants were entitled to summary judgment in their favor of this constitutional claim. Henry v. Maue, No. 06-1439, 2008 WL 5188834 (W.D. Pa, Dec. 10, 2008).

leads us to conclude that it advances both Eighth and Fourteenth Amendment claims. Construed in this way, we find that one of these claims, the Fourteenth Amendment due process claim which appears to lie at the heart of this case, has not been addressed by either party. Since the parties have not addressed this separate constitutional claim presented on the face of the complaint, it is evident that the Defendants are not entitled to dismissal of that complaint as a matter of law.

Moreover, with respect to both the Eighth and the Fourteenth Amendment substantive due process claims articulated by Leaphart in the complaint, an informed assessment of the legal merits of these claims necessarily requires an examination of factual matters outside the pleadings themselves. While this examination may yield a resolution to some or all of these claims, such an assessment cannot be undertaken in the current procedural posture of the case on a motion to dismiss, but must await further development of the factual background of this alleged medical misadventure.[2]

Accordingly, it is recommended that the Defendants' motions to dismiss be denied at this time without prejudice to further development of the legal and factual bases for these defense motions.

---

[2]Furthermore to the extent that PHS as an entity is also claiming that there is insufficient evidence of its involvement in these acts, this claim appears to be somewhat  fact-bound, is not subject to resolution on the current record, and must await summary judgment

**D.** **Legal and Factual Considerations Preclude a Finding At This Time That Defendant Doctor Kansal Was Not a State Actor**

Having found that the Plaintiff's constitutional claims are not subject to wholesale dismissal at this time, we now turn to a narrower claim advanced by one party, Defendant Dr. Kansal, in his motion to dismiss. Noting that §1983 only applies to and creates liability for persons who are state actors, Kansal asserts that as a private physician who is hired by state prison officials to treat a specific inmate he is not a "state actor" and may not be held personally liable to this inmate under this federal civil rights statute.

Kansal is doubtless correct that, as a general proposition, it its clear that in order to state a valid cause of action under 42 U.S.C. § 1983, a plaintiff must show that the defendants are state actors. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). However, in a case such as this where the state and private health care providers work collaboratively and cooperatively providing medical care to an inmate in state custody, the line between private parties and state actors frequently is blurred and indistinct. As the United States Court of Appeals for the Third Circuit has aptly observed, with respect to this requirement of state action under § 1983:

> Although there is no "simple line" between state and private actors, Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), we have explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private

behavior may be fairly treated as that of the State itself." <u>Leshko</u>, 423 F.3d at 339 (internal quotation marks and citation omitted). To answer that question, we have outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." <u>Mark</u>, 51 F.3d at 1142 (other alterations, internal quotation marks and citations omitted). Under any test, "[t]he inquiry is fact-specific." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 638 (3d Cir.1995); <u>see also Crissman v. Dover Downs Entm't Inc.</u>, 289 F.3d 231, 234 (3d Cir.2002

<u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d. Cir. 2009).

Moreover, in making this very "fact-specific" state action determination "the focus of our inquiry is not on whether the state exercises control over a putative state actor as a general matter, but whether the state has exercised control over the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation." <u>Kach,</u> 589 F.3d at 649.

With respect to the provision of medical services to inmates, caselaw has helped to define when private health care providers become state actors for purposes of §1983. At the outset, it is clear that private physicians who are contracted to provide health care services inside prison walls will be considered "state actors." Indeed, In <u>West v. Adkins</u>, 487 U.S. 42 (1988) the Supreme Court expressly extended §1983 liability to private physicians who contract to provide medical services inside prisons.

Rejecting a claim that this contractual relationship was insufficient to make the private doctors state actors the Court held that:

> The fact that the State employed [the doctor] pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other "state employees" does not alter the analysis. It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to [the prisoner]; the State delegated that function to [a doctor]; and respondent [doctor] voluntarily assumed that obligation by contract

West v. Atkins,  487 U.S. 42, 55-56 (1988).

The rationale of West, which focused on the state's delegation of its duty to provide adequate health care to a private medical provider, has led many courts to extend this rational beyond the confines of health care within prison walls to outside medical treatment of inmates by private physicians. Several key concepts emerge from these cases.

First, recognizing the "fact- specific" nature of this state action inquiry, Kach v. Hose, 589 F.3d 626, 646 (3d. Cir. 2009), courts consistently hold that the issue of whether a private physician's actions were sufficiently intertwined with the state's

duty to provide adequate care to inmates may not be resolved on a motion to dismiss, but rather demands development of a factual record outside the pleadings. See, e.g., Rodriguez v. Plymouth Ambulance, 577 F.3d 816 (7th Cir. 2009)(reversing screening dismissal of complaint on state action grounds and calling for factual development); Tatsch-Corbin v. Feathers, 561 F.Supp.2d 538 (W.D. Pa. 2008)(denying motion to dismiss private physician on state action grounds).

Furthermore, when that factual record is fully developed, while a few cases have held that a privates physician treating an inmate outside of a jail is not a state actor; see, e.g., Sykes v. McPhillips, 412 F.Supp.2d 197 (N.D.N.Y. 2006), Nunez v. Horn, 72 F.Supp. 2d 24 (N.D.N.Y. 1999), the more broadly accepted view is that a private doctor who accepts a medical referral of an inmate's care from his jailers also accepts the state's constitutional responsibilities to provide adequate care to that inmate and is, therefore, a state actor with respect to medical issues relating to that prisoner. Rodriguez v. Plymouth Ambulance, 577 F.3d 816 (7th Cir. 2009)(reversing screening dismissal of complaint on state action grounds and calling for factual development); Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994)(reversing finding that private physician was not a state actor); Tatsch-Corbin v. Feathers, 561 F.Supp.2d 538 (W.D. Pa. 2008)(denying motion to dismiss private physician on state action grounds); Anglin v. City of Aspen, 552 F.Supp.2d. 1229 (D.Col. 2008)(denying summary judgment to private physician on state action grounds); Lewellen v. Schneck Medical

<u>Center</u>, No. 05-83, 2007 WL 2363384 (S.D. Ind. Aug. 16, 2007), (denying summary judgment for private physician on state action grounds, resolving claim on merits).

In our judgment, these cases, which charge private physicians who voluntarily undertake health care for inmates with the duty to discharge the state's constitutional obligations as to those inmates, reflect both the majority, and the better, view of this legal issue. Inmates like Leaphart typically do not have the right to choose their outside consulting physician. They must accept what the state offers, and when the state offers an inmate the services of a particular doctor, the Supreme Court's observations are particularly apt: "Whether a physician is on the state payroll or is paid by contract, the dispositive issue [regarding state action] concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to [the prisoner]; the State delegated that function to [a doctor]; and respondent [doctor] voluntarily assumed that obligation by contract." <u>West v. Atkins</u>, 487 U.S. 42, 55-56 (1988). Thus, absent unusual or compelling facts beyond those recited in the complaint, we find that the relationship between the prisoner, the state and the doctor was sufficiently intertwined to justify holding Doctor Kansal responsible for discharging the state's constitutional duties to

provide adequate health care to Leaphart, and refraining from depriving this inmate of the right to make medical decisions regarding amputation of his body parts. Therefore, the motion to dismiss this Defendant on state action grounds should be denied.

### E. Leaphart's Pending States Malpractice-Informed Consent Claim May be Subject to Dismissal

Having recommended that this case proceed forward as a federal civil rights action, we briefly address one other issue raised by the parties. Fairly construed, Leaphart's complaint also articulates a pendant state law claim of medical malpractice. This malpractice claim appears to be premised in part upon the alleged failure of treating physicians to secure the Plaintiff's informed consent before conducting this surgery. The Defendants have moved to dismiss this pendant state law claim, arguing, in part, that Leaphart has failed to comply with the requirements of state law in lodging this claim. Specifically, the Defendants allege that Leaphart has failed to comply with Pennsylvania Rule of Civil Procedure 1042.3 by filing a valid certificate of merit along with this malpractice claim.

Pa.R.C.P. No. 1042.3 ("Rule 1042.3") provides in pertinent part:

Rule 1042.3. Certificate of Merit
(a) In any action based upon an allegation that a licensed professionals deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint

or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

We find that, to the extent that Leaphart brings a malpractice action premised on a lack of informed consent, his failure to comply with Rule 1042.3 is a bar to this state law claim. In this regard, the controlling legal standards can be simply stated:

Under Pennsylvania law, "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional standard.'" Smith v. Friends Hospital, 928 A.2d 1072, 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3). Federal courts have found that this rule constitutes state substantive law and thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing Chamberlain v. Giampap, 210 F.3d 154, 158-61 (3d Cir.2000), which held that an analogous New Jersey statute was substantive law); Velazquez v. UPMC Bedform Mem'l Hosp.., 328 F.Supp.2d 549 (W.D.Pa.2004). Courts may dismiss cases when a plaintiff fails to file a required certificate of merit. See, e.g., Stroud v. Abington Mem. Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D.Pa.2007);

> McElwee Group, LLC v. Mun. Auth. of Elverson, 476 F.Supp.2d 472, 475 (E.D.Pa.2007) (holding that "failure to submit the certificate is a possible ground for dismissal by the district court, when properly presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

This requirement of state law applies with equal force to counseled complaints, and to *pro se* medical malpractice actions brought under state law. See Levi v. Lappin, No. 07-1839, 2009 WL 1770146 (M.D. Pa. June 22, 2009). Therefore, Leaphart's status as a *pro se* litigant cannot excuse him from compliance with the state substantive law when bringing this state law claim of malpractice. Id. Moreover, Pennsylvania caselaw construing this certificate of merit requirement has expressly extended the requirement to malpractice claims like those brought here that are grounded in an alleged failure to obtain informed consent. See, e.g., Estate of Aranda, 987 A.2d 727 (Pa Super. 2009); Pollock v. Feinstein, 917 A.2d 875 (Pa. Super. 2007); Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778 (M.D.Pa. Aug. 13,2009)(construing Pennsylvania law).

Given the substantive nature of this requirement under Pennsylvania law, and its clear application to malpractice claims based upon a lack of informed consent, it is recommended that Leaphart's state law malpractice/informed consent claim be dismissed. However, while the Plaintiff's failure to comply with Rule 1042.3 requires dismissal of this malpractice claim, we note that the sanction imposed under state law

for a violation of this rule, entry of a non pros by the prothonotary, has no precise analogue in the federal system. Thus, as least one federal court has held in this context that "[u]nlike dismissal with prejudice, the entry of non pros is a default judgment that does not bar the plaintiff from commencing another suit based upon the same cause of action." Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D. Pa. 2007)(quoting, Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 511 (E.D. Pa. 2004). Moreover, under Pennsylvania law, a party can seek relief from a non pros dismissing a case under Rule 1042.3, by coming into compliance with the rule, showing that there is a meritorious malpractice cause of action, and providing a reasonable explanation or legitimate excuse for the earlier non-compliance. See Womer v. Hilliker, 208 A.2d 269 (2006), see also Pa.R.C.P. No. 3051. Thus, Leaphart may still have recourse to the courts on this claim, if he timely files a certificate of merit and can otherwise meet the standards prescribed by law for a late filing. However, until Leaphart takes these steps, and complies with Rule 1042.3, we must reserve judgment on the question of whether he is entitled to any further relief on this claim.

## IV.    **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' Motions to Dismiss (Docs. 31, 36 and 52) be GRANTED, in part, and DENIED, in part, as follows:

1.    The Defendants' motions to dismiss Leaphart's constitutional claims under the Eighth and Fourteenth Amendments should be DENIED.

2.    Defendant Kansal's motion to dismiss for lack of state action should be DENIED.

3.    The Defendants' motion to dismiss pendant state law malpractice/informed consent claims for failure to comply with Rule 1042.3 should be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

  Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

_**S/Martin C.  Carlson**_

Martin C. Carlson
United States Magistrate Judge

Dated: November 22, 2010